UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARLENA LATIF,

                              Plaintiff,

                -against-

THE CITY OF NEW YORK, THE DEPARTMENT
FOR THE AGING, CARYN RESNICK, SAL
RULLAN, KAMLESH PATEL, JACK RIZZO,
MICHAEL OGNIBENE, LORRAINE CORTES-
VASQUEZ, MICHAEL BOSNICK, JOHN DOE(S)
and JANE DOE(S) (names currently unknown) each
in his/her official and individual capacities,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  _3/28/2024___

20 Civ. 8248 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Marlena Latif, brings this employment discrimination action against

Defendants, the City of New York (the "City"), the New York City Department for the Aging

("DFTA"), Caryn Resnick, Sal Rullan, Kamlesh Patel, Jack Rizzo, Michael Ognibene, Lorraine

Cortes-Vasquez, Michael Bosnick, and John and Jane Does.  She alleges disparate treatment,

disparate impact, hostile work environment, retaliation, conspiracy, and other claims arising

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. §§

1981, 1983, 1985, 1986; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29

U.S.C. § 621 *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 206; the New York State Human

Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights

Law ("NYCHRL"), N.Y.C Admin. Code § 8-101, *et seq.*  Second Am. Compl. ("SAC") ¶¶ 112–

205, ECF No. 115; *see generally id.*  Specifically, Latif, who is African American, alleges that

she was denied promotion within DFTA's Information Technology ("IT") unit because of her

race and age, that she and other African-American employees were not offered equivalent

opportunities to gain professional training, and that Defendants' promotion policies have a

disparate impact on African-American employees. *Id.* ¶¶ 1–4, 14, 74. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defs. Mot., ECF No. 127; *see* Defs. Mem., ECF No. 129. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Latif, an African-American woman, is a computer associate in the IT help desk unit at DFTA. SAC ¶ 9. She began working at DFTA in 2003 as a field service technician after twenty years of work experience in other City agencies, including over fifteen years in other IT roles. *Id.* ¶ 21.

Promotions at DFTA are governed by New York Civil Service Law § 61, which requires agencies to fill vacancies by selecting one of the three eligible candidates who scored highest on the relevant examination offered by the agency. *Id.* ¶¶ 90–94; N.Y. Civ. Serv. Law §§ 50, 61. The agency can consider seniority, previous training and experience, and performance evaluations when making its final decision. N.Y. Civ. Serv. Law § 52; SAC ¶ 92. The performance evaluations at DFTA have objective criteria, but allow supervisors the discretion to include or omit subjective factors. SAC ¶ 73.

Latif alleges that Sal Rullan, the deputy director of the IT unit at DFTA, passed her over for promotion along with two African-American co-workers, Eddy Toussaint and Jimmy Ekpe, who were qualified for the positions they sought based on their exam scores. *Id.* ¶¶ 17, 22–25, 39, 40, 43, 45, 50, 53, 54, 58, 60, 80, 81. Those positions were either left open or eventually

---

[1] The following facts are taken from the SAC and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

filled by non-African-American employees.  *Id*.  In addition, "on several occasions" throughout Latif's employment at DFTA, she, Toussaint, and Ekpe were not permitted to participate in trainings that would allow them to gain skills required for promotions, although non-African-American employees that Rullan planned to promote were permitted and encouraged to do so. *Id.* ¶¶ 41, 42, 77, 82, 98, 100.  Latif alleges that she, Toussaint, and Ekpe were also the only employees to receive negative performance evaluations, despite their competence, experience, and satisfactory performance.  *Id.* ¶¶ 34, 61, 62.

Latif further alleges that she was subjected to frequent ridicule and insult that impacted her employment, *id.* ¶¶ 27–29, 31, 36, 47, and that when she, Toussaint, or Ekpe sought promotions, they were repeatedly told to find employment at another city agency.  *Id*. ¶¶ 35, 46, 51.

On April 12, 2018, Toussaint filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that he was denied promotions and career-advancing trainings in violation of Title VII and the ADEA.  Toussaint EEOC Charge, ECF No. 130-1.  Latif filed her complaint in this action on October 13, 2020, ECF No. 2, and amended the complaint on June 9, 2021, ECF No. 39.  She subsequently filed her own EEOC charge on February 14, 2022, claiming discrimination based on her race and age.  *See* Latif EEOC Charge, ECF No. 128-1.  She filed the operative second amended complaint on December 16, 2022.

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the SAC as partly time-barred, and for failure to (1) exhaust administrative remedies, (2) plead personal involvement of certain defendants, and (3) state claims upon which relief can be granted.  Defs. Mem. at 2.

**DISCUSSION**

I.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.*  A court must "accept[] the factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

II.   Procedural Issues

A.  Exhaustion

"Before an individual may bring a Title VII [or ADEA] suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e–5); *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 567 (2d Cir. 2006) (describing ADEA exhaustion requirement).  A plaintiff "may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations

4

contained in her EEOC charge." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (quotation marks and citations omitted).

Filing an EEOC charge, however, is not a "jurisdictional prerequisite to suit." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Pursuant to the single-filing rule, a plaintiff may "'piggyback' onto the timely filed charge of another plaintiff to satisfy the exhaustion requirement." *Rusis v. Int'l Bus. Machines Corp.*, 529 F. Supp. 3d 178, 199 (S.D.N.Y. 2021) (describing "[t]he single-filing rule, commonly referred to as the piggybacking doctrine").  To utilize the single-filing rule, a plaintiff's claims must be reasonably related or "arise out of similar discriminatory treatment in the same time frame" to the filed charge in order to afford "the employer [] adequate notice and an opportunity for conciliation." *Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir. 1986) (cleaned up); *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 71 n.9 (2d Cir. 2015) ("To be reasonably related, a claim must be one that reasonably would be expected to fall within the scope of the conduct complained of in the administrative charge.").  "Courts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related." *Gronowicz v. Coll. of Staten Island*, 359 F. Supp. 2d 243, 248 (N.D.N.Y. 2005); *see, e.g.*, *Hawkins v. Wegmans Food Mkt., Inc.*, 224 F. App'x 104, 105 (2d Cir. 2007) (summary order) (finding age and race discrimination allegations not "reasonably related" to gender and disability claims in EEOC charge).

Latif filed her EEOC charge on February 14, 2022, more than sixteen months after filing suit.  Defendants argue that the SAC should be dismissed based on her failure to first file a charge with the EEOC or the equivalent state agency.  Defs. Mem. at 7–8.  The Court disagrees.

Latif can "piggyback" on Toussaint's April 2018 EEOC charge filed before her complaint. *See* Toussaint EEOC Charge.

Defendants next argue that Latif's claims must be dismissed because they do not arise out of the same discriminatory treatment as Toussaint's. Defs. Reply at 4–5, ECF No. 132. The Court again disagrees. In his charge, Toussaint states that he is a "Black 57-year-old male" and alleges that his employer's practices violated Title VII and the ADEA. Toussaint EEOC Charge. In this action, Latif makes comparable allegations, claiming discrimination based on race and age. *See generally* SAC. Further, Latif and Toussaint have been employed by the same DFTA unit for over twenty years, and Latif alleges that many of the discriminatory actions were directed toward both of them. *See* SAC ¶¶ 5, 21, 82; *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990) ("Where the grievances arise in a work unit of modest size . . . we agree that mere similarity of the grievances within the same general time frame suffices to permit the 'single filing rule.'"). The Court, therefore, finds that Latif's claims are reasonably related to those articulated in Toussaint's EEOC charge and she may invoke the single-filing rule to satisfy the exhaustion requirement.

Accordingly, Defendants' motion to dismiss the SAC on the ground that Latif failed to exhaust her administrative remedies is DENIED.

### B. Time Bar

#### 1. Title VII and ADEA Disparate Treatment Claims

To claim a violation of Title VII or the ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts. *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136 n.1 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-5(e)(1)); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 236 (2d Cir. 2007) (citing 29 U.S.C. § 626(d)). "A claim of

6

employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017).

As a threshold matter, the clock on Latif's Title VII and ADEA claims runs from the filing of her EEOC charge in 2022—and not Toussaint's charge filed in 2018. The single-filing rule does not alter the statutes of limitations on her claims. "All that the piggybacking rule does is functionally waive the administrative-exhaustion requirement—it does not extend the 300-day deadline to file an EEOC charge." *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 83–84 (2d Cir. 2023) ("[T]he piggybacking rule, at its core, is not about timeliness.").

Defendants argue that any alleged discriminatory acts occurring 300 days before Latif filed her EEOC Charge are time-barred, and that the continuing violations doctrine is inapplicable to her disparate treatment claims. Defs. Mem. at 9–10. The Court agrees.[2]

Under Title VII, "discrete acts" such as failure to promote are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012) ("*Morgan* established that an employer's failure to promote is by its very nature a discrete act."). Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. Each time DFTA denied Latif a promotion over the course of her career constitutes a discrete act, and every such act that falls outside of the

---

[2] Defendants also argue that the case should be dismissed because Latif failed to file her suit within ninety days of Toussaint receiving his right-to-sue notice, another requirement of Title VII and the ADEA. Defs. Reply at 5, ECF No. 132. Because the single-filing role only applies to exhaustion—and not timeliness—Defendants' argument fails. Latif had already filed suit when she obtained her right-to-sue notice, satisfying the ninety-day filing requirement, and Defendants cite no authority to the contrary.

300-day limitations period is not actionable under Title VII and the ADEA.  Similarly, failure to

train or denial of training requests and negative performance evaluations are considered "discrete

acts" to which *Morgan* applies.  *Anderson v. N.Y.C. Dep't of Corr.*, No. 12 Civ. 4064, 2013 WL

5229790, at *3 (S.D.N.Y. Sept. 17, 2013) ("[T]he continuing violation exception does not apply

because each denial of . . . training . . . [is] considered [an] individual 'discrete act[]' against

[plaintiff]."); *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 366 (S.D.N.Y.

2008) (recognizing that "[e]ach negative performance evaluation is a discrete act").

       Accordingly, under Title VII and the ADEA, allegations regarding disparate treatment

occurring before April 20, 2021—300 days before Latif filed her EEOC Charge on February 14,

2022—are time-barred.[3]

### 2.  NYCHRL and NYSHRL Disparate Treatment Claim

       "[C]laims under the NYSHRL and the NYCHRL are time-barred unless filed within three

years of the alleged discriminatory acts." *Kassner*, 496 F.3d at 238.[4]  By executive order, state

law claims were tolled during the first months of the COVID-19 pandemic, from March 20,

2020, to November 3, 2020.  *Gabin v. Greenwich House, Inc.*, 210 A.D.3d 497, 498 (N.Y. App.

Div. 2022); *Brash v. Richards*, 195 A.D.3d 582, 582–85 (N.Y. App. Div. 2021).

       For the reasons stated in the Court's Title VII analysis, the continuing violations doctrine

does not apply to Latif's disparate treatment claims under the NYSHRL.  *See Taylor*, 207 F.

---

[3] Latif argues that New York state executive orders tolling statutes of limitations during the COVID-19 pandemic apply to her federal claims.  Not so.  Where, as here, a federal statute contains the statute of limitations, it is unaffected by state tolling rules. *Verne v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 5427, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022) (collecting cases).

[4] The filing of an EEOC complaint tolls the statute of limitations. In this case, however, Latif filed her EEOC charge after the suit was commenced.  Accordingly, the operative date for calculating statutes of limitations is the date Latif filed her complaint, October 13, 2020.  ECF No. 2.

Supp. 3d at 302 (noting that "the continuing violations doctrine of the NYSHRL mirrors that of

Title VII"). Accordingly, any NYSHRL claims that accrued before March 20, 2017—three years

and 207 days before Latif filed her complaint on October 13, 2020—are time-barred.

The Court, however, concludes that the continuing violations doctrine applies to Latif's

NYCHRL disparate treatment claims. "New York courts have held that the pre-*Morgan*, more

generous continuing violations doctrine continues to apply to discrete acts of employment

discrimination under NYCHRL." *Bright v. Coca Cola Refreshements USA, Inc.*, No. 12 Civ.

234, 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014) (citation omitted), *aff'd sub nom. Bright

v. Coca-Cola Refreshments USA, Inc.*, 639 F. App'x 6 (2d Cir. 2015). Therefore, "[d]iscrete acts

. . . can . . . trigger the NYCHRL's continuing violations doctrine where they can be shown to be

the result of a discriminatory policy or practice." *Taylor*, 207 F. Supp. 3d at 303. Latif has

sufficiently pleaded that the denied promotions, Rullan's refusal to permit her to attend trainings,

and her negative performance evaluations were part of a pattern of discriminatory actions against

African-American employees by Rullan and his subordinates stretching back until 2005. SAC ¶¶

24, 25, 34, 58, 60–62, 77, 81, 82, 98. Accordingly, Latif's NYCHRL claims that accrued before

March 20, 2017, are not time-barred insofar as they are part of the continuing pattern of

discriminatory treatment against her.

### 3. Hostile Work Environment Claims

Finally, Latif's Title VII, NYSHRL, and NYCHRL hostile work environment claims are

not time-barred even if the underlying acts fall outside the statute of limitations. "[A] charge

alleging a hostile work environment claim . . . will not be time barred so long as all acts which

constitute the claim are part of the same unlawful employment practice and at least one act falls

within the time period." *Davis-Garett v. Urb. Outfitters, Inc*., 921 F.3d 30, 42 (2d Cir. 2019)

(emphasis omitted) (quoting *Morgan*, 536 U.S. at 122).

III.   Abandoned and Withdrawn Claims

Defendants contend that "in her response to [their] pre-motion letter, [Latif] appears to

concede that she doesn't have viable § 1981 claims, or §§ 1983/1985/1986 conspiracy claims."

Defs. Mem. at 2 n.1 (citing ECF No. 125 at 1 n.1 ("[Latif] will withdraw the § 1981 claim, as

well as the conspiracy claims under §§ 1985, 1986, and 1983")).   Latif raises §§ 1981 and 1983

in her opposition papers.  Pl. Opp. at 14, 16, ECF No. 130.  But, she does not address her

§§ 1985 and 1986 conspiracy claims.  *See* Pl. Opp.  "[D]istrict courts frequently deem claims

abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to

dismiss stage." *Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020).  Although the

Second Circuit has indicated that courts should depart from this practice in cases of manifest

injustice, *see id.*, this is not such a case.  Latif also concedes that under the New York City

charter, Defendant "DFTA is not suable," Pl. Opp. at 9, and withdraws her disparate impact

claim and her claims against Defendant Lorraine Cortes-Vazquez.  *Id.* at 11, 16–17.

Accordingly, Defendants motion to dismiss Latif's disparate impact claim in Count One,

her §§ 1985 and 1986 claims in Counts Seven and Fourteen, and her claims against Defendants

DFTA and Lorraine Cortes-Vazquez is GRANTED.

IV.   Lack of Personal Involvement

Defendants move to dismiss the § 1983, NYSHRL, and NYCHRL claims against

Michael Bosnick and Caryn Resnick for failure to "attribute any particular allegations to" them.

Defs. Mem. at 10.  Latif argues that they are properly named as defendants because Bosnick

"gave full de facto control of hiring decisions to Rullan by going along with whoever he

10

suggested" and "Resnick oversaw all upper-level management at DFTA." Pl. Opp. at 10; *see*

SAC ¶¶ 84, 109. Because Latif's § 1983 claim is only against the City, the Court does not

address the parties' § 1983 arguments with respect to the individual Defendants. SAC ¶¶ 178–

182.

To establish individual liability under the NYSHRL and NYCHRL, "a plaintiff must

plead and prove that a defendant was personally involved in the violation." *Adams-Flores v.*

*City of New York*, No. 18 Civ. 12150, 2020 WL 996421, at *6 (S.D.N.Y. Mar. 2, 2020); *see*

*Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004). A plaintiff may establish personal

involvement by showing that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference . . . by failing to act on information
> indicating that unconstitutional acts were occurring.

*Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015); *Williams v. N.Y.C. Hous. Auth.*,

No. 16 Civ. 8193, 2021 WL 2077817, at *11 (S.D.N.Y. May 24, 2021) (stating that the personal

involvement standard for supervisory liability set out in *Littlejohn* applies to NYSHRL and

NYCHRL claims), *vacated and remanded on other grounds*, 61 F.4th 55 (2d Cir. 2023); *see also*

*Bernheim v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 9723, 2020 WL 3865119, at *5 (S.D.N.Y. July 9,

2020), *R. & R. adopted*, 2020 WL 4383503 (S.D.N.Y. July 31, 2020).

Latif fails to allege sufficient facts to maintain her claims against Bosnick and Resnick.

As to Bosnick, Latif does not allege that Bosnick was aware of Rullan's allegedly discriminatory

acts—only that Bosnick "would typically go along with whoever [Rullan] suggested" for a

position.  SAC ¶ 84.  Standing alone, the allegation does not establish that Bosnick was "grossly negligent" or "deliberate[ly] indifferent."  *Littlejohn*, 795 F.3d at 314.  The SAC further lacks sufficient circumstantial evidence to infer that Bosnick had the requisite knowledge of or condoned Rullan's discriminatory actions.  Concerning Resnick, the SAC's allegations are conclusory and mere recitations of the law.  SAC ¶¶ 109, 122 (alleging that Resnick "should have ensured that her staff members below her were in compliance with [equal employment opportunity] policies," and that she "personally engaged in unlawful employment practices by discriminating against [Latif] with respect to the terms, conditions and/or privileges of employment, when [she] engaged in, sanctioned and/or condoned the discriminatory and disparate treatment of which [Latif] complained.").

Accordingly, Defendants' motion to dismiss all claims against Bosnick and Resnick is GRANTED.

V.    Disparate Treatment (Race Discrimination)

A.  Title VII and NYSHRL

Claims of disparate treatment under Title VII and the NYSHRL are analyzed using the *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (noting that race discrimination claims brought under Title VII are analyzed under the *McDonnell Douglas*); *Ferrante v. Am. Lung Ass'n*, 687 N.E.2d 1308, 1311 (N.Y. 1997) ("The standards for recovery under [the NYSHRL] are in accord with [the] [f]ederal standards under [T]itle VII.").

To establish a prima facie case of discrimination under the *McDonnell Douglas* framework,  Latif must show "that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the

adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz*, 609 F.3d at 491–92.

In order to satisfy this burden at the pleadings stage, a plaintiff must plausibly allege "facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). Although Latif may raise an inference of discrimination by "making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to [hers] to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001).

### 1.   Adverse Employment Actions

Latif has alleged three distinct adverse employment actions: failure to promote, denial of career-advancing training opportunities, and negative performance evaluations.

To establish a prima facie case of discrimination based on a failure to promote, Latif must show "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Latif has made such a showing. First, she alleges that she took the requisite exam for the computer specialist position, scored 100%, and was the top scorer on the exam. SAC ¶ 24, 48. On several occasions, Latif went to Rullan and other supervisors and indicated her desire to be promoted to the computer specialist position. *See, e.g.*, *id.* ¶ 24–25. Most pertinently, Latif approached Rullan in 2018 about becoming a computer specialist, which came with a $18,000 pay increase. *Id.* ¶ 58. Rullan said he would only be able to promote her to computer associate, a lower title, and increase her salary by

$4,000. *Id.* However, shortly thereafter, a non-African American employee with less experience and only a provisional title—whereas Latif held a permanent title—was promoted to computer specialist and received an $18,000 raise. *Id.* Latif alleges that she was more qualified for the computer specialist position, applied for it, and was rejected.

Next, Latif alleges that Rullan's refusal to permit her to attend trainings and his failure to inform her of professional training opportunities constitute adverse employment actions. "[W]here an employee can show material harm from the denial, such as a failure to promote or a loss of career advancement opportunities," she has suffered an adverse employment action. *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) (quotation marks and citation omitted). Latif alleges that she, Toussaint, and Ekpe "were told on several occasions that they were not allowed to participate in trainings that did not entail tasks or skills which are part of their current job title," SAC ¶ 82, but that promotions hinged on completing specific trainings, *id.* ¶¶ 98–101; *cf. id.* ¶ 77 (alleging that non-African American employees were permitted to attend these trainings). These allegations are sufficient to establish adverse employment actions. *See Santiago v. Axis Specialty U.S. Servs., Inc.*, No. 18 Civ. 12012, 2021 WL 639527, at *7 (S.D.N.Y. Feb. 16, 2021) (finding plaintiff had demonstrated an adverse employment action on a failure to train where plaintiff established that defendant "provided training to other employees and that she was not invited to participate in the training" and that "her ultimate termination was connected to a lack of knowledge caused by inadequate training").

Finally, Latif argues that her negative performance evaluations were adverse employment actions. "Negative evaluations can be adverse employment actions only if they give rise to material adverse changes in work conditions." *Kpaka v. City Univ. of New York*, No. 14 Civ. 6021, 2016 WL 4154891, at *7 (S.D.N.Y. Aug. 2, 2016) (citation omitted). The denial of a

raise, or the receipt of a smaller raise than expected, can constitute a "materially adverse change" for the purposes of a plaintiff's prima facie case. *See Tieu v. N.Y.C. Econ. Dev. Corp.*, No. 21 Civ. 5951, 2024 WL 580063, at *7 (S.D.N.Y. Feb. 13, 2024).  Here, Latif claims that "[p]erformance evaluations are one of the determinant factors [DFTA] uses in granting merit raises in salary and promotions, which would also carry a corresponding raise in salary."  SAC ¶ 62.  As such, the negative evaluation she received in 2019 is actionable given the weight evaluations carry in DFTA's promotion and salary determinations.  *Id.* ¶ 61.

### 2.   Inference of Discrimination

In order to establish an inference of discrimination in a failure to promote claim, a plaintiff must allege that the position remains open and the employer continues to seek applicants of the plaintiff's qualifications, *see McDonnell Douglas*, 411 U.S. at 802, or the position was filled by someone not a member of her protected class, *see de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).  If a plaintiff takes the latter route, she must establish that the comparator was less qualified for the position.  *See Anyanwu v. City of New York*, No. 10 Civ. 8498, 2013 WL 5193990, at *14 (S.D.N.Y. Sept. 16, 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003)).

In the context of a denial of training opportunities, moreover, "an inference of discriminatory intent may be derived from . . . the more favorable treatment of employees not in the protected group."  *Trachtenberg*, 937 F. Supp. 2d at 470.

Here, Latif alleges that several non-African American individuals were promoted instead of her and were afforded training opportunities that she was denied: (1) on November 27, 2017, Jianmin Li was promoted to computer specialist, SAC ¶ 50; (2) that same day, Eleni Limperopoulos "was also given the position" by being moved from a provisional to "[p]robable

[p]ermanent" title, *id.*; (3) Terence Mai and Milin Jani "were moved from the Help Desk to network administrators and maintain [positions] as Computer Specialist," *id.* ¶ 81; and (4) Igor Makavoz and Kari Chan were "moved from Helpdesk to webhosting," *id.*

For Li and Limperopoulos, Latif relies on exam performance to demonstrate her superior qualifications. However, she also alleges that promotion was based both on exam scores and on other factors, such as trainings and performance evaluations. *Id.* ¶¶ 92, 98–101. Therefore, merely stating that Latif had previously scored well on the exam, ¶ 24, without otherwise demonstrating the comparators' lack of qualifications, does not sufficiently establish the relative disparity between the comparators and Latif, nor that the comparators were significantly less qualified for the computer specialist position. *See Anyanwu*, 2013 WL 5193990, at *14 (collecting cases).

However, Latif has alleged that the exam was not open to provisional employees and that Limperopoulos had a provisional title when she took the exam. SAC ¶ 50. Because Limperopoulos was, therefore, unqualified to sit for the exam, she was unqualified for the computer specialist position. Latif has further alleged (1) that Yogesh Niroula—who started working at DFTA considerably later than Latif—received training opportunities Latif was unaware of and promoted to Computer Specialist, *id.* ¶ 58; (2) that two white employees were approved for trainings Latif, Toussaint, and Ekpe were not aware of, *id.* ¶ 77; and (3) that Rullan specifically denied Latif, Toussaint, and Ekpe's requests for training, while approving similar trainings for other employees, *id.* ¶ 82. These allegations, taken together, are sufficient to move Latif's claims across the line from "conceivable" to "plausible." *Iqbal*, 556 U.S. at 678.

16

Defendants do not otherwise rebut Latif's claims by giving a non-discriminatory reason for the failure to promote Latif or the refusals to permit her to acquire career-advancing professional training.

Accordingly, Defendants' motion to dismiss Latif's NYSHRL disparate treatment claims is DENIED.  However, because Latif does not allege adverse actions within 300 days of the filing of her EEOC charge in 2022, Defendants' motion to dismiss her Title VII claim is GRANTED.[5]

### B.  NYCHRL

As the Court has determined that Latif's state disparate treatment claims are sufficient to withstand the motion to dismiss, it concludes that her NYCHRL claims similarly survive, because "federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall."  Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 § 1 (Oct. 3, 2005); *see, e.g., Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671, 2013 WL 2358596, at *11 n.13 (S.D.N.Y. May 30, 2013).

### VI.   Disparate Treatment (Age Discrimination)

The Court analyzes ADEA disparate treatment claims under the *McDonnell Douglas* framework.  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3 (2d Cir. 2021). Because Latif has not alleged any adverse employment actions in the 300 days prior to her EEOC charge, *see supra* II.B.1, V.A., her ADEA claim must be dismissed.  Even if this were not

---

[5] "Despite the irony that results from permitting a plaintiff who has not filed an EEOC charge to 'piggyback' [and rely on the timing of] another employee's charge, but denying the [that] option to [Latif] who has exercised somewhat more diligence by initiating an EEOC charge," the Court is bound by the Circuit's holdings, which precludes her Title VII claim from moving forward.  *Rusis*, 529 F. Supp. 3d at 204 (cleaned up) (discussing *Holowecki*, 440 F.3d at 564).

the case, the SAC does not contain factual allegations which admit an inference of discrimination based on her age. Latif's allegations center around employees with fewer years of experience in the IT unit, which is not a proxy for age discrimination. S*ee, e.g.*, SAC ¶¶ 41, 42, 58; *cf. Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611–12 (1993); *Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 449 n.2 (S.D.N.Y. 2007) ("The ADEA prohibits discriminating against employees based on their age. Discriminating against employees based on length of tenure, however, is not prohibited by the ADEA.").

Accordingly, Defendants' motion to dismiss Latif's ADEA claim is GRANTED.

VII.   Hostile Work Environment

A.  Title VII and NYSHRL

To adequately plead a hostile work environment claim under federal and New York state law, a plaintiff must allege that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[.]"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011).  A plaintiff must also plead facts that tend to show that the complained-of conduct: "(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quotation marks and citation omitted).

Latif alleges that she was the target of a racially discriminatory statement as well as frequent intimidation and ridicule.  *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388, 2012

18

WL 5451189, at *9 (S.D.N.Y. Nov. 8, 2012).  For example, she alleges that when Rullan asked her about her hours and she said they were from 10 a.m. to 6 p.m., he stated, "I bet she is going to try and leave at 5:30pm." *Id.* ¶ 47.  On another occasion, Latif was forced to stand for an entire workday as "punishment" because she objected to her supervisor's attempt to change her schedule with minimal notice.  *Id.* ¶ 36.  And, on another occasion, Latif approached the same supervisor about a possible promotion and he "yelled at [her] to go find a job somewhere else." *Id.* ¶ 24.  This encounter left her "intimidated and shocked," as she had never seen "any other employee being treated as she did when presenting management with test results."  *Id.*  At other times, Latif felt unsafe when colleagues were shooting rubber bands and paper clips around the help desk office.  *Id.* ¶ 26.  When she sought to address the issue, the network administrator "waved a broom in her face while telling her she was out of line[,] . . . and [] threatened to slam [her] onto her desk."  *Id.*  Upon approaching her supervisor about this encounter, he "failed to acknowledge her or address the issue."  *Id.*; *see also id.* ¶ 30 (discussing Rullan "taunt[ing]" Latif in a meeting about the complaint and Latif "[f]earing for her physical safety.").  In another encounter with her supervisor, Latif alleges he plainly told her, "no one likes you here."  *Id.* ¶ 31.

Latif also alleges that the IT unit's racially hostile environment is evidenced by the treatment of Ekpe and Toussaint.  The complaint details how all three were passed over for promotions, denied training opportunities, and told on multiple occasions that if they wanted promotions, they should find employment at another City agency.  *See, e.g.*, *id.* ¶¶ 35, 46, 51, 55, 82.  And, Latif alleges that Ekpe's non-African-American supervisor "would avoid communication with him," requiring Ekpe to receive instructions and directions from his colleague and peer, Jack Rizzo.  *Id.* ¶ 33.  Latif claims this served as both a way to ensure Rizzo was promoted over Ekpe and to isolate him.  *Id.*  She also alleges that after Rizzo became the

help desk manager, Rullan asked him "to give [Latif] and [] Toussaint negative performance evaluations." *Id.* ¶ 61.

Latif argues that Rullan's comment about her leaving at 5:30 p.m. instead of 6:00 p.m. was intended to convey that "African Americans are known to skip out on their responsibilities." SAC ¶ 47. Even crediting Latif's interpretation, a plaintiff who alleges "only one incident that is [] motivated by race" and fails to "connect this comment to her other allegations of unfair treatment, which are not facially related to her race," has not sufficiently pleaded a hostile work environment claim. *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 118–19 (2d Cir. 2010).

And, although Latif alleges that she was mistreated at work, "a hostile work environment . . . is actionable under Title VII [and NYSHRL] only when it occurs because of a protected characteristic." *Shankar v. Ankura Consulting Grp.*, No. 20 Civ. 7463, 2021 WL 3542803, at *6 (S.D.N.Y. Aug. 11, 2021) (*quoting Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)) (cleaned up). The SAC fails to plead that Latif's mistreatment—other than Rullan's stray comment—was the result of racial bias. Rullan's comment alone cannot amount to a hostile work environment. *Brenner v. City of N.Y. Dep't of Educ.*, 659 F. App'x 52, 54 (2d Cir. 2016) (holding that a stray comment, without more, does not amount to a hostile work environment). Absent allegations that the severe and pervasive conduct constituting the alleged hostile work environment was "because of" Latif's race, her hostile work environment claim must be dismissed. *Patane*, 508 F.3d at 113. Further, Latif's "allegations regarding the failure to promote and train [] do not rise to an objectively severe and pervasive level." *Toussaint v. City of New York*, No. 19 Civ. 1239, 2021 WL 4429316, at *9 (S.D.N.Y. Sept. 27, 2021) (citation omitted).

Accordingly, Defendants' motion to dismiss Latif's federal and state hostile work environment claims is GRANTED.

### B.  NYCHRL

The NYCHRL's standard for maintaining a hostile work environment claim is lower than that of its federal and state counterparts. *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006).  The NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability." *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (N.Y. App. Div. 2009) (citing *Farrugia*, 820 N.Y.S.2d at 725).  A plaintiff need only allege "that similarly situated individuals who did not share [her] protected characteristics were treated more favorably." *Whitfield-Ortiz v. Dep't of Educ. of City of N.Y.*, 116 A.D.3d 580, 581 (N.Y. App. Div. 2014).  However, "petty slights or trivial inconveniences . . . are not actionable." *Williams*, 872 N.Y.S.D.2d at 41.

Latif has sufficiently alleged that she was treated less well than similarly situated non-African-American employees, plausibly due to a discriminatory motive.  As such, she has sufficiently alleged a hostile work environment claim under the NYCHRL.  *See Moazzaz v. MetLife, Inc.*, No. 19 Civ. 10531, 2021 WL 827648, at *11 n.3 (S.D.N.Y. Mar. 4, 2021) ("Under the NYCHRL, there are not separate standards for 'discrimination' and 'harassment' claims." (quoting *Clarke*, 2013 WL 2358596, at *11)); *Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 182–83 (E.D.N.Y. 2017); *Toussaint*, 2021 WL 4429316, at *9.

Accordingly, Defendants' motion to dismiss Latif's NYCHRL hostile work environment claim is DENIED.

VIII.   <u>Equal Pay Act</u>

The Equal Pay Act "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Craven v. City of New York*, No. 19 Civ. 1486, 2020 WL 2765694, at *7 (S.D.N.Y. May 28, 2020) (citation omitted).  To state an Equal Pay Act claim,

> a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions.

*Kairam v. W. Side GI, LLC*, 793 F. App'x 23, 26 (2d Cir. 2019) (cleaned up).  "A plausible [Equal Pay Act] claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal."  *Id.* (cleaned up and emphasis omitted). "The standard is demanding, and requires that a plaintiff establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Dass v. City Univ. of N.Y.*, No. 18 Civ. 11325, 2020 WL 1922689, at *6 (S.D.N.Y. Apr. 21, 2020) (internal quotation marks and citation omitted)

Latif alleges that she was previously "the lowest paid technician in DFTA" and that she "continues to have one of the lowest paid positions in the DFTA IT Unit."  SAC ¶¶ 37, 77. These allegations are insufficient to state an Equal Pay Act claim as they do not provide the Court any basis to compare Latif's job duties, skills, and experience with those of potential comparators.  *See Balchan v. City Sch. Dist. of New Rochelle*, No. 21 Civ. 4798, 2023 WL 4684653, at *12–13 (S.D.N.Y. July 21, 2023); *Solomon v. Fordham Univ.*, No. 18 Civ. 4615, 2020 WL 1272617, at *13 (S.D.N.Y. Mar. 17, 2020).

Accordingly, Defendants' motion to dismiss Latif's Equal Pay Act claim is GRANTED.

IX.   <u>Municipal Liability</u>

In order to sustain a § 1983 or § 1981 claim against a city, a plaintiff must establish municipal liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978) (§ 1983); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36 (1989) (§ 1981); *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." (quoting *Jett*, 491 U.S. at 733)).  Under *Monell*, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (emphasis omitted).  Rather, the government as an entity is only liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

"To allege the existence of an affirmative municipal policy, a plaintiff must make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policymaking authority for the municipality." *Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009).  Allegations that defendants acted pursuant to a "policy," without any facts suggesting the policy's existence, are plainly insufficient. *Id.*

Here, Latif has not established an official policy; in fact, she alleges that Rullan's actions at DFTA violate municipal law.  SAC ¶¶ 92–93.  Latif alleges generally that DFTA maintains a "secretive process that lacks standards and allows management . . . to promote [] employees who

are not African-American" and a de facto policy of sending only non-African American employees to career-advancing trainings.  SAC ¶ 115.  Such allegations, without more to demonstrate the existence of a formal government policy, are insufficient.  *Missel*, 351 F. App'x at 545.

Nor has she alleged that Rullan is an authorized policymaker.  Whether the official in question is a final policymaker "is a legal issue to be determined on the basis of state law," *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1349 (2d Cir. 1994).  A plaintiff bears the burden of establishing an official's status as a final policymaker with allegations going to the official's scope of employment and his role within the municipal or corporate organization.  *See Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000).

Latif alleges that Rullan "was the Deputy Director of the IT Unit at [DFTA] and was [] responsible for making the decision on who would be promoted or hired from the competitive exams for Computer Specialist (Software) position."  SAC ¶ 17.  She also alleges that "Rullan . . . has full control over who he could hire because . . . his superior would typically go along with whoever he suggested."  *Id.* ¶ 84.  However, decisionmaking authority does not necessarily equate to policymaking authority.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–482 (1986); *Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 426–27 (2d Cir. 2004) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." (citation omitted)).  Although Latif has alleged a number of informal DFTA practices, she has not alleged that Rullan had the formal policymaking authority to "adopt rules for the conduct of government."  *Id.* at 427

(quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)). Further, Latif's allegation that Rullan's supervisor would "typically" go along with his suggestions, SAC ¶ 84, implies that Rullan's authority was not final.

Accordingly, Defendants' motion to dismiss Latif's §§ 1981 and 1983 municipal liability claims is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

Defendants' motion to dismiss is GRANTED as to Latif's:

1. Title VII disparate treatment claim (first cause of action);
2. ADEA disparate treatment claim (fifteenth cause of action);
3. Title VII hostile work environment claim (fourth cause of action);
4. NYSHRL hostile work environment claim (ninth cause of action);
5. Equal Pay Act claim (sixteenth cause of action);
6. §§ 1985 and 1986 claims (seventh and fourteenth causes of action); and
7. §§ 1981 and 1983 claims (fifth and thirteenth causes of action).

Defendants' motion to dismiss is DENIED as to Latif's:

1. NYSHRL disparate treatment claims (second, eighth, and eleventh causes of action);
2. NYCHRL disparate treatment claims (third, sixth, and twelfth causes of action);
3. NYCHRL hostile work environment claim (tenth cause of action); and
4. Title VII retaliation claim (seventeenth cause of action).[6]

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 127 and the following Defendants from the docket:

1. Department for the Aging
2. Lorraine Cortes-Vazquez
3. Kamlesh Patel

---

[6] Although Defendants mention this claim in their pre-motion letter, ECF No. 122 at 43, they do not move to dismiss it and there is no evidence that Latif has abandoned the claim.

    4.  Jack Rizzo[7]
    5.  Caryn Resnick
    6.  Michael Bosnick

SO ORDERED.

Dated: March 28, 2024
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[7] The Court previously dismissed all claims against Defendants Patel and Rizzo for lack of personal jurisdiction. ECF No. 63.